Good morning, Your Honors. Rick Barnett on behalf of the appellant, Thomas Foster. May it please the Court. Quote, Dear Thomas Foster, On July 31, 2000, at 1047 North Johnson Avenue, El Cajon, California, Southern District of California, the properties described above were seized by the Bureau of Alcohol, Tobacco, and Firearms, parentheses, ATF, end of parentheses, for forfeiture. Unquote. Page 37 of the excerpt of court's record. The issue presented before this court today is a very narrow issue, and that is the application of the exemption or exception to the Federal Courts Claim Act. The court, of course, has had the opportunity to review the facts of this case. It bears noting that Thomas Foster, who was wheelchair bound, spent 11 months in custody before he was acquitted at trial of the charges against him. While he was in custody, one of his sons apparently attempted to sell part of his firearms collection. He had collected firearms for over 40 years. All these firearms, every single one of them was legal. Every single one of them that needed to be registered was registered pursuant to applicable statute. As indicated, they were seized for forfeiture in the express language of the ATF, page 37 of the excerpt of court's record. He filed his administrative claim, which led to the filing of a civil forfeiture complaint. Counsel, isn't the problem you have that this was seized as part of a criminal investigation, not as a formal forfeiture proceeding? The answer is within, at most, six hours it was seized for both purposes. Well, wait a minute. The firearms were initially seized in July of 2000, correct? Right. And the forfeiture action was the letter that you're referring to did not come to be until April of 2001. Well, let me make sure you understand. Am I right about those dates? You are right about those dates. Okay, so initially there was nothing that happened in July of 2000 that had anything to do with forfeiture in the normal civil forfeiture context. The fact that he was acquitted is interesting, but the firearms were seized initially in conjunction with a criminal investigation that was prosecuted. Essentially, I need to explain the procedures. I'm very responsible. The court is incorrect about its analysis in that regard. What happens is the very first thing that happens in what ultimately becomes a civil forfeiture action is the property is seized. Then the agency, within a certain period of time, will send out a notice saying, yeah, we seized it back on this date, and you have 35 days from the date of first publication to go ahead and do whatever you're going to do, either claim it or not claim it. And, indeed, the government can't avoid or cause a delay in the reality of property having been seized by simply holding off and sending the notice. That's true, but initially in July of 2000, there was a search warrant that allowed the seizure of contraband and so on and so forth, a typical criminal warrant, and that's pursuant to which that initial seizure occurred. There was no seizure without a warrant, right? There was a seizure pursuant to a warrant. Correct. Okay. So the warrant provided the notice as to the government's purpose in initially seizing the property. It was contraband or fruits of a crime or evidence of a crime, right? Isn't the warrant the description of the government's authority to make the initial seizure? Right, but there's a couple problems with this. Number one, the question whether, and we never got the opportunity to develop this in the court below, because we were never given the opportunity to conduct discovery, but which weapons were seized pursuant to the warrant, which weapons were, if not all of them were seized for forfeiture, we were never able to develop that. But they, in their own admission, in that April 10th letter, they don't say, well, you know, in September or October or April we've decided to seek forfeiture in this case. They say on July 31st, at that address, these firearms were seized by the ATF for forfeiture. They don't say we seized them only for a search and then later on we decided to do a forfeiture. They said it was seized on that date for forfeiture. And, indeed, I was looking for it in the record, but in the motion the government filed below, there's some reference to a September date, September 16th, I think, where some decision or discussion was made, and I'll try to do it in my reserve time, as to forfeiture. So, I mean, it's just not correct to say nothing ever occurred as to forfeiture until April 10th, months and months later, when they decided to send out this letter. Do you want to say anything about the Kosak and Cervantes cases? Yes. There is no question that Kosak was a correct statement of the law. It still is a correct statement of the law. But the fact is that CAFRA, the Civil Asset Forfeiture Reform Act, created the exception that we have cited in our papers, where the property is seized for the purpose of forfeiture of federal law. The interest of the claimant was not forfeited. The interest of the claimant was not remitted or mitigated. And the claimant was not convicted of a crime for which the interest of the claimant in the property was subject to forfeiture under a federal criminal law. I think we all agree as to every one of those elements, except the first. The government claims it wasn't seized for forfeiture. We claim it was. If there's any ambiguity, would not it be construed in favor of the government under the general principle that sovereign immunity is narrowly interpreted in favor of the sovereign? Well, I think the problem here is it's really a factual dispute. We say it was seized for forfeiture. They say it wasn't seized for forfeiture. And we don't have any development on the record of that at all. I do want to respond to the court's inquiry as to Cervantes. And that is, in rereading it in preparation for this argument, Cervantes is a pre-CAFRA case. There is no mention of CAFRA in Cervantes whatsoever. The individual purchased the vehicle in July of 1999. He was subsequently apprehended on October 22nd of 1999. And then he was released from custody in February of 2000. CAFRA didn't actually go into effect until August 23rd of 2000, having been passed April 23rd of 2000 and signed by the president, I believe, on April 26th of 2000. If one reviews Cervantes, there isn't a single mention of the exception under subsection C that was created in CAFRA that applies to this case. So I think Cervantes is just clearly distinguishable. This is an interesting appeal in that it is such a narrow issue. And we believe that the ATF cannot avoid its own words that on July 31st, not April 10th, not September 16th, not some other date, that on July 31st, these firearms were seized for forfeiture. I'd like to reserve the remaining time I have. You may do so, counsel. Thank you. We'll hear from the government. May it please the Court. Dave Wallace, Assistant U.S. Attorney. Wallace. For the United States. Mr. Bournette of the Appellant's Counsel does cite the seminal question in this case, which is. Could you turn the volume up a little bit, please? Appellant's Counsel does address the seminal question in the case, which is. His argument is that the later notice in April of 2001 constructively makes the seizure in July of 2000 for purpose of forfeiture. I think his argument is slightly different than that, as I understood it. I think he says that the later notice was evidence of the government's original intention. Which is a little bit different, I think. At least that's how I understood what he was saying. He said that the government all along intended to seize this property for forfeiture, and the way we know that is to look at the April 10th letter. At least that's how I understood what he was saying. Thank you. I have a cite for the Court. I believe Appellant's argument, he does use the word constructively in attempting to move or make the purpose of the initial seizure for forfeiture. But let me address the Court's question about whether that would be evidence of the initial purpose. Judge Subraw of the District Court did consider the letter that Mr. Barnett provided to the Court, the April 2001 letter. That was the notice. And the Court said that notice doesn't tell me anything about the seizing agent's intention for that seizure nine months earlier when he seized those weapons. So the Court considered the context of the investigation and of the application for the search warrant. And in that context concluded, and having weighed the letter submitted by Mr. Barnett, concluded that that did not establish at the time of the seizure a purpose for forfeiture. The contextual factors that the Court cites, or that are clear from the Court record, are the fact that, number one, this was a search warrant that was involved. It was not a seizure warrant. Number two, on the face of the warrant, there's nothing expressed about any intention for seizing for purpose of forfeiture. That could have been done in the narrative of the affidavit. That could have been done in the face of the application procedure warrant. That could have included, for example, a citation to a statute such as 18 U.S.C. 981B that would provide for a forfeiture. None of those hallmarks, earmarks, indicators of a purpose were present. And so the Court did weigh that. It's also noteworthy, this wasn't cited by the Court, but it's in the record and it allows for context. In the release that was part of the settlement later in the forfeiture case with the government, a plaintiff's own, this is at Supplemental Excerpt 57, the appellant, or the plaintiff, indicates that the forfeiture release, he admitted that the seizure was pursuant to investigation. You're looking at Paragraph 3, or the firearm seized by ATF on X dates pursuant to their investigation? Right, yes, Your Honor. So I think the District Court was not clearly erroneous in his finding and conclusion that the purpose of the seizure was for investigation and evidence and not for forfeiture. The Court, let me address this. I do believe counsel argues or attempts to argue that there is this constructive transformation of the purpose based on the later notice. And I'd like to address that briefly. Number one, CAFRA is a construct that allowed for certain procedural safeguards, including notice, some burden shifting or changes in burden, some allowance for fees for indigents that could not afford attorneys. There are a number of constructs set there, including this change that allowed for a civil action. But Congress did not, in the statute itself, the plain reading of the statute, does not say any act in connection with forfeiture. Meaning, had Congress intended to broadly construe any event in the purpose of forfeiture, it could have done that by saying in connection with forfeiture. Or it could have specifically articulated means, such as a later filing of a complaint by an assistant U.S. attorney, as being a triggering event. It didn't. It's not there. Your Honor has addressed this idea that waiver of sovereign immunity must be unequivocally expressed in statutory text and will not be implied. Ambiguities are always construed in favor of the sovereign as well. And finally, limitations and conditions upon which the government consents to be sued must be strictly observed. And exceptions are not to be implied, which is what I think a plaintiff's counsel is attempting to do. If the court reads the record, Mr. Barnett's in the oral argument with the district court, he asked for, he said, I would like to present another letter I think I can find in discovery that will also say, similar to the April 1 letter. And I would concede, assuming he even found such a letter, it wouldn't make any difference in the outcome of this determination. So there's no factual dispute here. What there is is a mixed question of fact and law. And the determination of whether Judge Subraw properly applied the law to the constellation of known facts. And the final point that's there that should be addressed is, and I don't agree with Mr. Barnett's factual assertion earlier that all the weapons were legal. I don't accept that. That's his representation. But it doesn't matter for the purpose of this legal issue, right? It doesn't matter. But those were facts that were, I think, not brief that I just would like to clarify the record. I guess the final point I would make is that even if this court concludes that the district court was clearly erroneous in determining the purpose of the seizure. And this court concluded, well, that seizure on July 28th and 31st, that those were for purpose of forfeiture. Where does that get us? That gets us to a seizure for purpose of forfeiture, which predates CAFRA, which Mr. Barnett just told the court was effective August 23rd, 2000. So if the government's right here that the weapons were not seized for purpose of forfeiture, and this court upholds the district court's decision on that, there's no cause of action available for plaintiff. If plaintiff is right that the district court was wrong and that seizure was for purpose of forfeiture, that seizure predated CAFRA. It had a date of implementation which was subsequent to the seizures that are at question here. Thank you, counsel. Mr. Barnett, you have some reserve time. Thank you, Your Honor. Let me begin with the last point because counsel is 100% incorrect about that. CAFRA wanted to affect August 23rd of 2000. However, this court has ruled in the subsequent years that, and I believe it was one of my cases, I'll be happy to supply the authority to the court, that if the complaint for forfeiture was filed after August 23rd, 2000, it became a CAFRA case. And this complaint for forfeiture wasn't filed until much later. And I'll be happy to supply that authority to this court. The seizure was on the 28th of July. 28th and July 30th. And this became a big issue because you had seizures that took place before CAFRA went into effect, and then you have the notices coming right afterwards or right before, and then you had cases where the complaints were filed afterwards. And this court has held, and I can certainly get the court the authority, that the critical date was CAFRA in effect at the time the complaint for forfeiture was filed. Okay. And what was the date of the complaint for forfeiture in this case? The civil complaint for forfeiture, we know it was sometime deep into 2001 because, remember, they don't even send out the notice until April 1st of, or April 10th, I believe it was, of 2001. As the government, again, page 37, the notice letter doesn't even go out until April 10th of 2001. We then filed our administrative claim, which caused them, under CAFRA, that within 90 days filed a complaint for forfeiture. There's three other points I want to quickly make before I run out of time. Number one, April 10th isn't even the operative date. If I could direct the court's attention, or any, it's not even the operative date, it's not even close to correct, in that the government's own admission, if I could direct the court's attention to page 19 of the excerpt of the clerk's record, in their motion below, their motion to dismiss it, line one, they say, on September 13th, 2001, the United States initiated forfeiture proceedings against the firearms seized in the criminal investigation. So by their own admission, it was at least as early as September 13th, and we know that, in fact, under forfeiture. That doesn't say anything about what they were seizing it for initially. It just says they initiated proceedings. They're saying they, administratively, that is filing the forms, initiated it on that date. But here, they've been saying it was April 10th. Number two, I wanted to point out that it's interesting, in their brief, when they discuss this issue of forfeiture and what the intention was, they never mention the critical language from the notice on page 37, and rather say, oh, it simply said, false or sole evidence supporting his contention that the property was seized for forfeiture is the form letter stating the properties were or was or were used or acquired in violation of 18 U.S.C. section 44 and are thus subject to forfeiture. Leaving out the language thing, on July 31st, we seized it for forfeiture. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Graber, Gibson